before I get into the merits of Mr. Stenger's claim, I wanted to talk a bit about jurisdiction because this issue has been floating around the country and specifically in the circuit for years and years. And this case gives the court an opportunity to determine whether a criminal defendant has a right to bring a claim, to bring a claim that the restitution order was not properly issued in a petition for rid of Coram Nobis. There's a split in to adjudicate the claim. The Seventh Circuit, as you know, has said there is. Other circuits have not addressed the issue. Let me ask you a question before that question. What was that? Let me ask you a question before that question. Sure. Because your reply, you said something surprising to me. You said that we cannot assume hypothetical jurisdiction for purposes of appeal if we think the merits are insubstantial, that you lose on the merits. Why can't we assume hypothetical statutory jurisdiction? We've said over and over again that we can do that. I don't want to cite all the cases for you, but what was your basis for saying that we can't assume hypothetical jurisdiction and say, but, you know, this is not sufficient for Coram Nobis relief? Why do we have to decide that interesting issue? The court has jurisdiction to determine jurisdiction. I mean, that's a. No, but we don't. If it's statutory, we can assume hypothetical statutory jurisdiction, can't we? I. Springfield Hospital. I haven't seen that case. Springfield Hospital, we said when a jurisdictional issue is statutory in nature, we are not required to follow a strict order of operations, but instead may proceed to dismiss the case on the merits rather than engage with the jurisdictional question, particularly when the jurisdictional issue is complex and the merits are straightforward. So why don't we assume jurisdiction and tell us why this would rise to the level of Coram Nobis relief? For the merits? Yeah. So yeah. Let me frame it for you. Correct me if I'm wrong. Your argument for why Coram Nobis relief should lie here is because you now have two Smith memos that you believe suggests that Commissioner Donergan lied at this restitution hearing about knowledge of suspicions of fraud when the hold was lifted. Right? Isn't that the basis of this? That's it. All right. So two problems that the district court dismissed this case on. One is you had the memos, the government produced the memos three times over multiple years. So to receive Coram Nobis relief, you have to have a sound reason for why this was not brought during the sentencing. And these could have been cross-examined, the Commissioner could have been cross-examined about these memos at the sentencing. Right? There was none. So why don't you lose just on that? Well, it's on me. Your client. Your client. I don't understand. Your client. You're arguing that didn't satisfy the relief. Well, no, you have to understand that there were six million pages of documents in this case. We made an extraordinary effort to find out what the state did before and after it lifted the hold on investments in ANC Bio and Burke. We looked for these memos. We had an incredibly sophisticated search engine that we were using. I know I punched David Cassidy's name into it. Do you have any authority for the proposition, any authority for the proposition that with a lot of docs, you're somehow excused from having found them either for purposes of cross-examination at the hearing to use them effectively or even failing that, I suppose, to bring a direct appeal? When we brought the direct appeal, we didn't know about it. But you had them again, but you didn't have them. Any authority for the proposition that with a lot of documents, you're not obligated to use them, to find them and use them at trial and that you can bring a ridicorum nobis? We try to find them. Any authority for the proposition that you're excused from having found them because there were a lot? No. Okay. But it's obvious. It's obvious. So in every case... No, wait. May I? Hold on. Let me. Okay. All right. What you're suggesting to us is there's millions of documents, which in a lot of cases have a lot of documents, that if a lawyer misses one and they lose, they should get, I don't know, a new trial, a new sentencing because there were millions of documents that they missed a few. That's what you're suggesting to us. No. Okay. So what's the difference? What I'm suggesting is that the extraordinary circumstances that the lead state regulator would come to court. She knew what the issue was. Wait, wait, wait. She knew what the issue was. You explained it in a couple of sentences and told the judge a lie. She knew in March of 2015 that the SEC had specifically told her deputy commissioner that my clients, not only the job numbers, but the FDA timeline were not reliable. What about the fact that when the judge made the findings regarding proximate cause, the judge assumed that these were circumstances such that the regulatory agency should have known. On page, Joint Appendix 354, he says, I understand what the defense is saying. In their view, sufficient red flangs and warning signs that the regulatory agency and the state should not have allowed the investment to be marketed again. Accepting for purposes of argument that that is a proximate cause, I rule against you anyway. So you want to go back to the district court and have a new sentencing over something that the district court already assumed to be true, which is that notwithstanding the commissioner's testimony, to the contrary, that they should have known. So why is that extraordinary? You already lost the first time with that assumption. The judge did not address the issue that Susan Donegan's decision to lift the hold on the investment in April of 2015, when she knew that the jobs numbers in the FDA timeline were not reliable, was an efficient intervening cause. The judge said, assuming that she should have realized it, your client still, it was not a superseding cause, and your client is still, there could be more than one proximate cause. The judge cited the cases that you can have more than one proximate cause. And as Judge Nathan pointed out, you didn't appeal that. It could have been appealed on fact they should have recognized it and they lifted the hold anyway, then I shouldn't have to pay restitution. You could have made that appeal. And that appeal was not made. The legal analysis was not appealed. And now you have more information about more red flags. So nothing has changed. Well, it did change because that was the document that showed that the statement... But the judge assumed it. The judge assumed it without the documents. Judge, we want to show you two more documents to support the assumption that you already gave at the sentencing. That's what you're telling us. There can be more than two proximate causes. Okay. I guess the part of the reason I'm struggling is that there are three reasons, or there are three criteria for gorm numbers relief, right? So one is that there are circumstances that are compelling. I think you said the compelling was the person lying? Yes. Okay. So that's the compelling. So then how do you solve the fact that you needed to do it earlier? Because that evidence was there. So even if we were to agree that somebody lying is compelling, how does that... The fact that y'all sat on it and didn't mention it earlier, how do you overcome that? Well, sat on it suggests we weren't doing our job. We didn't even try to find it. Okay. It wasn't raised earlier. We found hundreds of pages of documents that were confidential, attorney-client privilege, executive privilege. We went to the court. We filed those documents under seal. Susan Donegan knew, because it was mentioned in our restitution order, she knew that we hadn't found this document. And by the way, we tried to interview these state witnesses. We sent a letter to the Vermont Attorney General, who was representing all the state witnesses, asking for permission to interview these people. That was denied in a matter of moments. Keep in mind that Susan Donegan and her deputy, Michael Pichek, were both interviewed by the IRS and the FBI. Neither one of them told the federal investigators about this SEC-specific warning. And in fact, Michael Pichek told one of the agencies, I don't remember which one, that the SEC had not been forthcoming about information that they had. Now, that was true about the first phone call, because they had to go back, the SEC attorneys had to go back to get permission to tell the state people what they knew about the fraud up there. And we had no suspicion that the SEC had tipped them off. And it's not just that we didn't find the memos. This was a series of misdirections on the part of the state regulators, for whatever reason. We think it's political. All right, we have two minutes in rebuttal. Thank you, Mr. Williams. Yes, thank you. We'll hear now from the government. Ms. Kate. Good morning, Your Honors, and may it please the Court. I am Nicole Kate, representing the United States. William Stenger's ongoing desire to blame state officials for the harm suffered by the victims of his EB-5 project is clear. But Mr. Stenger provides no legal basis for this Court to do anything but affirm Chief Judge Crawford's denial of the extraordinary writ that Mr. Stenger sought. To prevail here, Mr. Stenger must establish that Judge Crawford abused his discretion by denying the petition for the writ. That is, that Judge Crawford's denial was not within the range of permissible decisions. In fact, however, Judge Crawford's denial was the only possible decision in light of the facts and the law before him. The case law is incredibly clear that a writ of quorum novus is an extraordinary writ that issues only in extreme cases. And the presumption that the proceedings below were reasonable is to be made. And it's on Mr. Stenger to convince the Court otherwise. He was unable to do that here. For Mr. Stenger to obtain the extreme relief that he sought, he bore the heavy burden of establishing three things. Judge Crawford's denial focused on two of those and found that Mr. Stenger made, quote, no showing for either of them. If we were to agree with that proposition, does the government have a view as to whether we would need to opine on both of those factors or only one? The Court could choose to focus on any one of the factors. In the series of cases this Court has decided on writs of quorum novus, the Court routinely focuses on just one of the factors. Here, there are multiple factors. I would say all three that would warrant this Court's denying his appeal. In particular, let's focus on the timing, which was discussed with counsel. The fact that Mr. Stenger's attorneys had the memos that are at issue for nearly three years prior to sentencing shows that there is no sound reason for failing to raise it earlier. As defense counsel has conceded, it was on them that they failed to find the memos prior to sentencing. The fact that if counsel was allowed to bring writs of quorum novus and be successful and known any time they didn't find documents that were in their possession, that would be a total changing of the way writs of quorum novus case law exists. That would be true if we were on direct appeal. That same argument would prevail, wouldn't it? You have the documents. There's no basis to try to get a second bite at the apple based on documents that you had previously. On that factor, it would be the same argument on direct appeal, wouldn't it? That may well be, Your Honor. The fact that Mr. Stenger did not choose to appeal and instead were in this even higher standard of a writ of quorum novus is even more reason to deny his appeal. I will point out there are cases where much more extreme allegations are made regarding where petitioners are seeking writs of quorum novus where they're alleging Brady violations or alleging competency issues in their underlying proceeding. And nonetheless, those writs have been denied. And I'll point the court to the- So that's like goes to prong one, right? The Brady violation and the things that you're saying are more serious. It's the prong one that they have to prove. I was actually speaking about prong two, that the sound reasons for the failure to raise the issue earlier. As to prong one, that Mr. Stenger needs to show extraordinary circumstances compelling the writ to correct some fundamental error in his sentencing proceeding. As has been discussed and is very important, Judge Crawford assumed the fact that Mr. Stenger now presses. That is, he assumed that the state officials, despite red flags, nonetheless allowed the so that there is no extraordinary or improper facet to the underlying proceeding. I also think it's important to just talk about the allegation that Ms. Donegan lied during the sentencing proceeding. But Ms. Donegan testified that had she known the job projections were false, she would not have let the project back into the market. She was pressed about what exactly the state of her department's knowledge was at the time and the concerns that they had. And she actually testified she suspected monkey business. There was smoke around this project. The Smith memos are nothing more than additional smoke. Specifically, and the memo that is at issue is in the joint appendix at 460. The language at issue here is the SEC attorneys expressed to folks in Ms. Donegan's division, not Ms. Donegan herself, that they had concerns regarding the job projections. SEC attorneys referencing concerns is not inconsistent with Ms. Donegan's testimony that if she had known the projections were false, she would not have approved the memos. Unless the court has further questions, I will otherwise. I mean, do you want to go through the third prong just because you've got time? Sure. Yes. Thank you, Your Honor. The third prong is that Mr. Stenger must show ongoing legal consequences that would need to be remedied by granting the writ. Here he is still in the process of paying the restitution order. Whether a writ of coram nobis is available for petitioners to address the restitution order is still an undecided question in this circuit. This case I do not think presents the case where we need to decide that. There have been a number of cases, including even more recently than the briefing, in the DINSA case, which was from January of this year, where this court has denied a petition for a writ on a restitution question and has still not answered that question. And I think the court can do so here as well. Thank you. Thank you, Your Honors. Mr. Williams, you have two minutes in rebuttal. Thank you. Getting back to the jurisdictional question, I would urge the court to make a decision about that because in the future there are going to be people like me who are going to do the research and it's always going to be an open question. And there is no reason why the court shouldn't decide whether the court has subject matter jurisdiction over petitions like Mr. Steiner's. These cases come up regularly throughout this circuit. All of the district court opinions refer to the case that says, well, maybe there is, maybe there isn't, but we'll assume that there is. And it would really be helpful to people in my position to know one way or another that there is with regard to criminal liability. I'd point the court to Carnassie v. United States. It's a 2013 opinion out of the Eastern District where Judge Spat held that since restitution in that defendant can obviously suffer serious consequences including further incarceration. And again, I would ask the court to consider whether a state official should be given a pass for misleading the court. I've been practicing law for a long time. I've tried lots of cases. And I've never seen a situation where a high-ranking government official would come in and tell the court after being asked a question by the lead prosecutor specific in time, if you knew before March, if you knew in March of 2015 that Mr. Stanger's job numbers were false, would you have approved the project? And she said no.